TERRY LEWIS BENFORD,⁣ )
⁣ )
      Plaintiff,⁣ )
⁣ )
      vs.⁣ )⁣      Case No. 1:11CV121 JAR
⁣ )
CORRECTIONAL MEDICAL SERVICES,⁣ )
 et al.,⁣ )
⁣ )
      Defendants.⁣ )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion for "Summary Judgment" Rule 56 of the F.R.C.P.--Memorandum of Law ("Plaintiff's Motion;" ECF No.77), the Motion for Summary Judgment of Gregory Rakestraw, D.O. (ECF No. 80), and the Motion for Summary Judgment of Dunklin County, Missouri, Willie Moore, Bob Holder, Billy Harper, and Rod Hargrove (ECF No. 82).[1]

## BACKGROUND

On November 14, 2009, Plaintiff Terry Lewis Benford ("Plaintiff") was incarcerated in the Dunklin County Justice Center (the "Jail") for misuse of 911. (Defendants Dunklin County, Missouri, Willie Moore, Bob Holder, Billy Harper and Rob Hargrove's Material Facts Claimed to be Undisputed (hereinafter "Dunklin Facts"), ECF No. 82, pp. 2-44, ¶8). He was a convicted misdemeanant and serving a six month sentence. (Memorandum of Law in Support of Motion for Summary Judgment of Dunklin County, Missouri, Willie Moore, Bob Holder, Billy Harper and Rod Hargrove ("Dunklin Memorandum"), ECF No. 83, p. 3). Plaintiff also had been arrested and charged

---

[1]Although Plaintiff's Motion for Summary Judgment was filed prior to defendants' motions for summary judgment, Plaintiff's Motion appears to be a peremptory strike against defendants' anticipated motions for summary judgment. Therefore, the Court does not address Plaintiff's Motion separately, but in the context of defendants' motions.

with burglary in the first degree and assault on a police officer.  (Id.).  Plaintiff was placed in the F

pod, the misdemeanor unit at the Jail.  (Dunklin Facts, ¶9).

On January 14, 2010, Plaintiff was involved in an altercation with another inmate, pretrial

detainee Jauntrell Harris.  (Dr. Rakestraw's Material Facts Claimed to be Undisputed (hereinafter

"Rakestraw Facts"), ECF No. 80, pp. 1-5, ¶5; Dunklin Facts, ¶11; Plaintiff Amended Opposition

Response in Memorandum of Law to the Defendant(s) Motion for Summary Judgment Pursuant to

Rule 56, F.R.C.P. ("Opposition"), ECF No. 94, p. 4).  After the fight, Plaintiff was taken to Twin

Rivers Regional Medical Center ("Twin Rivers") via ambulance.  (Rakestraw Facts, ¶6; Dunklin

Facts, ¶14).  At Twin Rivers, x-rays were taken of Plaintiff's left shoulder and knee.  The x-rays

showed no fractures, and a CT scan of Plaintiff's head showed no abnormalities.  (Rakestraw Facts,

¶7; Dunklin Facts, ¶¶15-16; ECF No. 84-2).  After being treated at Twin Rivers for three to four

hours, Plaintiff returned to the Jail.  (Dunklin Facts, ¶18).  When Plaintiff returned to the Jail, he was

placed in a wheelchair.  (Dunklin Facts, ¶19).  Thereafter, Billy Hopper[2]  placed Plaintiff in the

drunk tank, which consisted of a concrete slab, toilet and sink.  (Id.).  Plaintiff claims that he was

placed in the drunk tank as punishment for the incident with the other inmate, and not for any safety

reasons.  (Plaintiff's Motion, ¶8).

On January 15, 2010, Plaintiff submitted a Sick Call Request Form.  (Rakestraw Facts, ¶8).

Plaintiff requested treatment for his left knee and dizziness; the Sick Call Request Form did not

mention Plaintiff's left shoulder.  (Rakestraw Facts, ¶9).  Dr. Gregory Rakestraw, a licensed doctor

of osteopathic medicine and employee of Advanced Correctional Healthcare ("ACH"), examined

Plaintiff on January 15, 2010.  (Rakestraw Facts, ¶¶1, 10; Dunklin Facts, ¶¶6, 20).  Through his

examination of Plaintiff, Dr. Rakestraw determined that Plaintiff had a left knee sprain and muscle

---

[2]Hopper is a sergeant with the Dunklin County Sheriff's Department and is a corrections
officer.  (Dunklin Facts, ¶3).

contusion. (Rakestraw Facts, ¶10). Dr. Rakestraw prescribed Tylenol for five days, bed rest for forty-eight (48) hours, and follow-up as necessary. (Id.; Dunklin Facts, ¶21). Dr. Rakestraw does not recall Plaintiff complaining of left shoulder pain on January 15, 2010, and his notes do not reflect any such complaints. (Rakestraw Facts, ¶11).

On January 29, 2010, Dr. Rakestraw again examined Plaintiff and suspected that Plaintiff had a left knee lateral meniscus injury. (Id., ¶13). Plaintiff asked for an MRI, but the Jail did not have an MRI machine. (Id., ¶¶14-15). Plaintiff indicated that his mother would pay for an MRI, and Dr. Rakestraw authorized Plaintiff to obtain an MRI, pending approval of Jail officials. (Id., ¶16; ECF No. 84-5).[3] Plaintiff's transfer to receive medical care had to be approved by Jail authorities. (Rakestraw Facts, ¶17).

On February 4, 2010, Plaintiff filed a grievance because Dr. Rakestraw had not made arrangements for him to obtain an MRI. (ECF No. 84-6; Dunklin Facts, ¶27). Plaintiff stated that his knee was causing him severe pain. (ECF No. 84-6). Rod Hargrove, the jail administrator at the Jail, responded that the Jail would take Plaintiff to obtain an MRI at Plaintiff's expense. (Id.; Dunklin Facts, ¶2). Hargrove noted that the injury was self-inflicted and not life threatening. (ECF No. 84-6). On February 5, 2010, Plaintiff was presented to Judge Speilman for the purpose of obtaining a thirty-day release from the Jail to allow Plaintiff to seek medical care at his own expense. (Opposition, p. 6). On that date, the Jail released Plaintiff on his own recognizance. (Rakestraw Facts, ¶18; Dunklin Facts, ¶25).

On February 8, 2010, Dr. Thornton saw Plaintiff at the Missouri Delta Medical Center. (Dunklin Facts, ¶¶28-29). Dr. Thornton examined Plaintiff's knee and shoulder, gave Plaintiff an

---

[3]Plaintiff disagrees with this claim. He asserts that nurse "Joe Coronkge" contacted Plaintiff's mother who informed him that Plaintiff had no medical insurance and that she could not afford to pay for an MRI. (Plaintiff's Motion, ¶12). Whether or not Plaintiff's mother agreed to pay for the MRI, however, is not a material fact that would affect summary judgment.

elastic brace for his knee, and a prescription for pain. (Dunklin Facts, ¶29). On February 9, 2010, Dr. Thornton again saw Plaintiff and gave him a shot for pain in his knee and shoulder. (Dunklin Facts, ¶30). On February 18, 2010, Dr. Thornton gave Plaintiff more shots and a prescription for pain relief. (Dunklin Facts, ¶33).

On February 26, 2010, Plaintiff was re-arrested on a misdemeanor stealing charge and returned to Jail. (Opposition, p. 6; Rakestraw Facts, ¶19; Dunklin Facts, ¶32; Plaintiff's Motion, ¶17). During Dr. Rakestraw's February 26, 2010 examination of him, Plaintiff told Dr. Rakestraw that he had been seen by a physician while he was released from the Jail and that his physician diagnosed torn cartilage in his knee, which was what Dr. Rakestraw previously suspected. (Rakestraw Facts, ¶¶20, 21).[4] Dr. Rakestraw noted that Plaintiff's knee was unchanged since his January 29, 2010 examination. (Rakestraw Facts, ¶22). Plaintiff claimed that he did not obtain an MRI while he was out of Jail because he could not afford it. (Dunklin Facts, ¶39).

Plaintiff asserts that he was provided a wheelchair upon his arrival and booking at the Jail. (Plaintiff's Motion, ¶18). Plaintiff also had a walking cane. (Id.). According to Plaintiff, wheelchairs and walking canes are not permitted in the Jail because they have metal parts. (Id.). Dr. Rakestraw had not prescribed a wheelchair for Plaintiff. (Dunklin Facts, ¶35). In keeping with the purported policy against wheelchairs and canes, on February 28, 2010, Plaintiff was asked to give up his wheelchair and cane. (Dunklin Facts, ¶36: Plaintiff's Motion, ¶22).[5] When Plaintiff refused to give up his wheelchair and cane, Plaintiff grabbed the wheelchair and would not let go. (Dunklin Facts, ¶36; Plaintiff's Motion, ¶22). After Defendants asked Plaintiff to let go of the

---

[4]Plaintiff claims that he did not receive any medical care after his arrival on February 26, 2010 until March 2, 2010. (Opposition, p. 7).

[5]Plaintiff disputes this date and claims this event occurred on February 26, 2010, but the dispute regarding the date of this event is not an issue of material fact. (Plaintiff's Motion, ¶25). Defendant Holder's affidavit and the inmate booking sheet indicate that this event occurred on February 28, 2010. (ECF No. 82-1, ¶8).

wheelchair four times, Hargrove ordered Moore[6] and Hopper to remove him from the wheelchair. (Plaintiff's Motion, ¶23). Plaintiff was sprayed with mace, taken out of the wheelchair, and placed in the drunk tank for two hours. (Opposition, pp. 6-7; Dunklin Facts, ¶36; Plaintiff's Motion, ¶23).

On March 2, 2010, Plaintiff fell in court. (Rakestraw Facts, ¶25; Opposition, p. 7). Plaintiff returned to the Jail and remained in the medical infirmary until his transfer from the Jail on March 29, 2010. (Rakestraw Facts, ¶25). Plaintiff claims that he was "never provided any further medical care" after being place in the medical infirmary. (Opposition, p. 7).

On March 15, 2010, Plaintiff submitted a Sick Call Request Form, asking to be seen by "Doctor/Nurse" and indicating that he wanted medication for pain. (Rakestraw Facts, ¶23; Dunklin Facts, ¶34). On March 15, 2010, a licensed practical nurse examined Plaintiff, decided to continue monitoring Plaintiff, and ordered no strenuous exercise. (Rakestraw Facts, ¶24). The nurse contacted Dr. Rakestraw, who concurred with the treatment plan. (Id.).

On March 24, 2010, Plaintiff pled guilty to the felony charge of assault of a law enforcement officer, and received a six year sentence. (Dunklin Facts, ¶37; Opposition, p. 7). On March 29, 2010, Plaintiff was transferred to the Department of Corrections in Bonne Tere, Missouri. (Dunklin Facts, ¶38). Plaintiff claims that the Missouri Department of Corrections Medical/Mental Health unit diagnosed him with post-traumatic stress disorder, arthritis in his left knee and left shoulder, and possible internal ligament damage. (Opposition, p. 7).

Plaintiff testified at his deposition that he has not had surgery on his left knee or shoulder. (Rakestraw Facts, ¶27). An MRI on Plaintiff's knee in February 2011 showed that Plaintiff suffers from rheumatoid arthritis in his knee, and did not indicate any other injury. (Id.).

## SUMMARY JUDGMENT STANDARD

---

[6]Willie Moore is a corrections officer with the Dunklin County Sheriff's Department. (Dunklin Facts, ¶4).

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

# I.    DEFENDANT GREGORY RAKESTRAW'S MOTION FOR SUMMARY JUDGMENT

## A.    Standard for Deliberate Indifference Claim

Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Nelson v. Corr. Med. Servs., 583 F.3d 522, 531-32 (8th Cir. 2009) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  To establish deliberate indifference, Plaintiff "must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it."  Id. The second part of the test requires Plaintiff to prove that the prison officials were more than negligent. Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006). Rather, Plaintiff must show that the prison official's mental state was "akin to criminal recklessness." Gordon ex. rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006).

Plaintiff alleges that Dr. Rakestraw was deliberately indifferent to Plaintiff's medical needs because he failed to examine and treat Plaintiff's injury to his left shoulder.  (Prisoner Civil Rights Complaint Under 42 U.S.C. §1983 (hereinafter "Complaint" or "Compl."), ECF No. 1, ¶71).[7] Plaintiff also claims that Dr. Rakestraw was deliberately indifferent because he did not provide for Plaintiff to receive an MRI to diagnose his injury and to allow him to obtain treatment for his knee pain.  (Compl., ¶72).

## B.    Objectively Serious Medical Need

Dr. Rakestraw argues that Plaintiff's §1983 claim for deliberate indifference fails because he has not established that he suffered from an objectively serious medical need.  "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or

---

[7]The Court notes that Plaintiff's Amended Complaint, ECF No. 8, identified the "John Doe" in Plaintiff's original Complaint as Dr. Rakestraw.

is so obvious that even a 'layperson would easily recognize the necessity for a doctors attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008)(quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). The determination that a medical need is objectively serious is a factual finding. Jones, 512 F.3d at 482. "If there is a dispute, and a reasonable jury could return a verdict for either party, then summary judgment is not appropriate." Id. The determination whether a medical need is sufficiently obvious cannot be analyzed in a vacuum. Id. The prison officials' "background knowledge is part of the analysis." Id.

Plaintiff asserts that Dr. Rakestraw was deliberately indifferent to his medical needs. (Plaintiff's Motion to Oppose the Defendant Gregory Rakestraw Memorandum in Support of Motion for Summary Judgment Pursuant to Rule 56 of Fed.R.Civ.P. ("Response"), ECF No. 84, pp. 3-4). First, Plaintiff asserts that he complained about his left shoulder during Dr. Rakestraw's January 15, 2010 examination and that Dr. Rakestraw had information regarding his left shoulder from Twin Rivers. (Id., p. 3). On January 29, 2010, Dr. Rakestraw noted that Plaintiff demanded an MRI and approved of an MRI, pending approval of the Jail authorities. Plaintiff complains that Dr. Rakestraw, however, did not provide him with any pain relief or any medical equipment to assist him in walking until he received an MRI. (Id., p. 4).

Dr. Rakestraw argues that Plaintiff cannot establish an objectively serious medical need. Dr. Rakestraw notes that, to date, Plaintiff has not had any surgery on his left knee or shoulder, and that an MRI of his left knee in February 2011 showed only rheumatoid arthritis. (Memorandum in Support of Motion for Summary Judgment of Gregory Rakestraw, D.O. ("Rakestraw Memorandum"), ECF No. 81, p. 5). Likewise, Dr. Rakestraw notes that there is no evidence that

the delay in treatment of Plaintiff adversely affected the body parts at issue.  (Id. (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)).[8]

The Court finds that Plaintiff fails to demonstrate that a genuine question of material fact exists as to whether he had an objectively serious medical need.  First, Plaintiff cannot demonstrate that his pain constituted an objectively serious medical need.  Plaintiff complains that Dr. Rakestraw did not provide him with pain relief while he was waiting for an MRI, but Plaintiff did not file requests for treatment or grievances complaining of chronic pain.  In fact, the record consists only of the grievances requesting an MRI on February 4, 2010 (ECF No. 94-7), and his request for pain management on March 15, 2010 (ECF No. 94-13).[9]  Based upon Plaintiff's limited pain complaints, the Court finds that Plaintiff cannot establish that he was suffering from chronic pain as a matter of law.  Cf. Majors v. Baldwin, 456 Fed. Appx. 616, 617 (8th Cir. 2012)(plaintiff stated a claim for deliberate indifference where he alleged that defendants withheld prescribed pain medication and did not provide adequate post-operative treatment; noting that "injury is considered obvious where prisoner exhibited physical symptoms relating to known medical issues or complaints of pain").

In addition, Plaintiff has failed to establish how a delay in treatment adversely affected his prognosis.  Crowley, 109 F.3d at 502; Pendleton v. Finley, No. 2:10-cv-02026, 2012 U.S. Dist. LEXIS 105491, at *34-35 (W.D. Ark. July 30, 2012)(same); Pfeiffer v. Butler County Sheriff Dep't, No. 1:10cv672, 2012 U.S. Dist. LEXIS 49898, at *23-24 (S.D. Ohio Apr. 10, 2012)("Pfeiffer submits no verifying medical evidence sufficient to demonstrate that a delay in treatment caused a serious medical injury").  The results of the MRI in February of 2011 indicate that Plaintiff suffered

---

[8]In Crowley, the Court held that the plaintiff's failure to obtain sunglasses did not have any adverse affect on his prognosis.  Id., at 502.

[9]Plaintiff provides a grievance, dated May 31, 2010, regarding not receiving an MRI while at the Jail, but that grievance was filed while he was in the custody of the Missouri Department of Corrections and is not relevant to his claims here.  (ECF No. 94-18).

from rheumatoid arthritis, and not a torn meniscus. Based upon Dr. Rakestraw's medical education, training and experience, he states that rheumatoid arthritis is not caused by an acute trauma, such as Plaintiff alleged occurred during his altercation on January 14, 2010. (Rakestraw Facts, ¶28). Plaintiff also has not had any surgery on his left knee or shoulder. Plaintiff has not demonstrated that his "injury" worsened because he did not receive an MRI and it was not treated. Plaintiff has failed to demonstrate that a genuine question of material fact exists as to whether he had an objectively serious medical need. Therefore, Dr. Rakestraw is entitled to summary judgment because Plaintiff cannot establish that he suffered from an objectively serious medical need.

### C.    Deliberate Indifference

Dr. Rakestraw also maintains that Plaintiff's §1983 claim against him fails because he cannot demonstrate that Dr. Rakestraw was deliberately indifferent towards Plaintiff's serious medical condition. Dr. Rakestraw notes that he saw Plaintiff every time treatment was requested. Dr. Rakestraw asserts that the first time that Plaintiff complained to him of left shoulder pain was on March 15, 2010, and Dr. Rakestraw does not have any recollection of Plaintiff seeking medical attention for his left shoulder prior to that date. (Rakestraw Memorandum, p. 10). Therefore, Dr. Rakestraw claims that there is no evidence that he was indifferent to any medical need involving the shoulder. With respect to Plaintiff's left knee, Dr. Rakestraw points out that the first time an MRI was mentioned was January 29, 2010, and that Plaintiff was released to obtain that MRI on February 5, 2010. (Id., p. 10).

In this case, the undisputed facts demonstrate that Dr. Rakestraw was not deliberately indifferent to Plaintiff's medical needs. First, the evidence indicates that Dr. Rakestraw treated Plaintiff in a responsive and timely manner. Indeed, the evidence before the Court is that Plaintiff was seen by medical personnel every time that he requested treatment. In fact, Plaintiff admits that he saw Dr. Rakestraw on March 15, 2010, and "I saw the nurse basically every day." (Opposition,

p. 11; see also Opposition, p. 7 (Plaintiff admits that he was "monitored" by Dr. Rakestraw and the nurse)).[10]   Likewise, Dr. Rakestraw's treatment notes indicate no delay in treating Plaintiff's shoulder.  According to Dr. Rakestraw's notes, Plaintiff did not complain of his left shoulder until March 15, 2010, and Plaintiff has not provided any evidence to contradict this testimony.  See Washington v. City of Univ. City, No. 4:09-CV-0784 HEA, 2012 U.S. Dist. LEXIS 47530, at *13 (E.D. Mo. Mar. 31, 2012)(plaintiff failed to establish deliberate indifference to a medical need where defendant "had no recollection of any such medical request by Plaintiff").  Finally, Plaintiff was provided an opportunity to obtain an MRI, but failed to do so.  The Court finds that Dr. Rakestraw was not indifferent to Plaintiff's requests for treatment and Dr. Rakestraw is entitled to summary judgment.

In addition, with respect to Plaintiff's complaints that he should have received an MRI and pain medication, the Court finds that Plaintiff's complaints merely relate to treatment decisions and does not constitute deliberate indifference to medical needs.  "Federal courts are reluctant to second guess treatment decisions made by competent physicians.  Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs."  Reynolds v. Crawford, No. 2:06CV00009, 2007 U.S. Dist. LEXIS 41317, at *10 (E.D. Mo. June 6, 2007)(internal quotations and citations omitted); see also Bell v. Hakala, No. 1:10-CV-00125, 2011 U.S. Dist. LEXIS 84788, at *16 (E.D. Mo. Jul. 8, 2011) ("Medical care so inappropriate as to evince intentional maltreatment or a refusal to provide essential care violates the Eighth Amendment, but a mere disagreement with the course of medical treatment does not constitute a claim of deliberate indifference.") (citing   Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991)).   Under the

---

[10]Even though he saw Dr. Rakestraw on the 15th and saw the nurse "basically every day," Plaintiff complains that he "never stated that he was provided any medical care."  (Opposition, p. 11).  Plaintiff's statement seems disingenuous, at best.

circumstances in this case, Plaintiff's assertion that Dr. Rakestraw did not order an MRI or prescribe additional pain medication does not rise to the level of intentional maltreatment or a refusal to provide essential care so as to constitute deliberate indifference. Blair v. Brown, No. 4:10CV1973, 2011 U.S. Dist. LEXIS 146646, *11-12 (E.D. Mo. Dec. 21, 2011)(failure to order MRIs or x-rays did not constitute deliberate indifference).

Thus, the record in this case reflects that when Plaintiff requested treatment or filed a grievance, he was provided with treatment or released from Jail to obtain treatment. Therefore, the Court finds insufficient evidence to show that Dr. Rakestraw was deliberately indifferent to Plaintiff's serious medical needs. Defendant Rakestraw's Motion for Summary Judgment as to Plaintiff's claim for deliberate indifference to serious medical needs is granted.

## II.    MOTION FOR SUMMARY JUDGMENT OF DUNKLIN COUNTY, MISSOURI, WILLIE MOORE, BOB HOLDER, BILLY HARPER, AND ROD HARGROVE[11]

---

[11]Defendants note that Plaintiff's Opposition does not comply with E.D. Mo. L.R. 4.01(E) because Plaintiff does not admit or deny each paragraph of Defendants' Statement of Uncontested Material Facts. (Defendants Hargrove, Holder, Moore Hopper and Dunklin County, Missouri's Response to Plaintiff's Amended Opposition to Defendants Hargrove, Holder, Moore, Hopper and Dunklin County, Missouri's Motion for Summary Judgment ("Reply"), ECF No. 95, p. 1). Although Defendants ask the Court to strike Plaintiff's Opposition, the Court will not impose this extreme remedy. The Court, however, deems Defendants' facts admitted due to Plaintiff's failure to admit or deny same. See Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1104 (8th Cir. 2004)(pursuant to its local rule, district court was entitled to deem a fact admitted in resolving the motion for summary judgment where the party opposing summary judgment did not contest that fact); Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 724 (8th Cir. 2003)(district court did not abuse its discretion where, as a sanction for noncompliance with the local rule, the district court ordered that the party opposing summary judgment be deemed to have admitted all of the moving party's statement of material facts).

### A.      Law Library

In his Complaint, Plaintiff asserts that Hopper and Hargrove refused to provide him access to a law library.  (Compl., ¶¶59-61). Plaintiff states that he filed a grievance asking for access to a law library to properly address his medical grievances, disciplinary grievance, and "to do research for legal material to address his pending felony charge from 2009." (Id., ¶58).  The Court construes this claim as an allegation of denial of access to the courts.

Defendants claim that Plaintiff's lack of access to a law library does not constitute a constitutional violation for two reasons.  First, Defendants note that Plaintiff had meaningful access to the Courts through his counsel.  (Dunklin Memorandum, p. 10 (citing Tate v. Kassulke, 409 F. Supp. 651, 658 (W.D. Ky. 1975)).  Second, Defendants assert that "Plaintiff's bare allegations that Dunklin County Justice Center has no law library fails to state a denial of access to the courts claim because Benford has not indicated that he has suffered any actual prejudice to a non-frivolous case." (Dunklin Memorandum, p. 10 (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)).

"Those in prison 'have a constitutional right of access to the courts.'" Williams v. Hobbs, 658 F.3d 842, 851 (8th Cir. 2011)(quoting Bounds v. Smith, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); see Murray v. Giarratano, 492 U.S. 1, 11 n.6, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)). To state a claim for access to the courts, "'a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" Williams v. Hobbs, 658 F.3d at 851-52 (quoting Hartsfield v. Nichols, 511

F.3d 826, 831 (8th Cir. 2008)); see also White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007)("To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.").

First, the Court finds that Plaintiff's access to the courts was constitutionally adequate because he was represented by counsel, Mr. Hirth. See McLennan v. McKee, No. 98-4215, 1999 U.S. App. LEXIS 21854, at *3 (8th Cir. Sept. 13, 1999)(plaintiff's access to the courts was constitutionally adequate because he was represented by the public defender's office, and his requests for meetings with his attorney were promptly forwarded); Johnson-El v. Schoemehl, 878 F.2d 1043, 1052 (8th Cir. 1989)(to provide access to the courts, pre-trial detainees must be afforded "adequate law libraries or adequate assistance from persons trained in the law")(citing Bounds v. Smith, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977)). Plaintiff has not alleged that Defendants precluded him from communicating with Mr. Hirth or that his access to Mr. Hirth was hindered in any way. In fact, Plaintiff admits that he met with his counsel several times while he was at the Jail. See, e.g., Opposition, p. 11 (stating he saw or spoke to his counsel on February 5, March 2, March 15, and March 24, 2010). Because Plaintiff was afforded access to the courts through his counsel, Plaintiff's claim that his constitutional rights were violated because of lack of access to a law library fails.

The Court also finds that Plaintiff has not alleged that he was unable to pursue a nonfrivolous legal claim as a result of his lack of access to a law library. See Casey, 518 U.S. at 353 (To prove actual injury, the plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."). Plaintiff has not alleged any sort of legal injury due to lack of access to the law library or identified what he would have researched if he had access to the law library. Rather,

Plaintiff merely states that he wanted to research his grievances and his pending felony charge. (Compl., ¶58). Plaintiff has pursued his grievances and does not demonstrate that his claims have been impeded because of lack of access to the law library. Similarly, Plaintiff pled guilty to the felony charge and has not shown how he was prejudiced in his criminal case by his lack of access to the law library. Accordingly, the Court finds that Plaintiff's claim for lack of access fails as a matter of law.

### B. Denial of Medical Care

#### 1. Defendants Holder, Hargrove, Hopper and Moore

Plaintiff generally alleges that Defendants Holder, Hargrove, Hopper and Moore were deliberately indifferent because they instructed ACH medical professionals, namely Dr. Rakestraw, not to treat him. (Compl., ¶¶30, 31, 34, 57). In addition, Plaintiff claims that Defendants denied Plaintiff medical care, particularly an MRI, due to cost. (Compl., ¶33; <u>see also</u> Opposition, p. 9 ("there remains a dispute to a genuine issue to a material fact, when Plaintiff['s] medical care cost became an issue"); Opposition, p. 11 (Defendants' acts were maliciously done "to avoid cost")).

In turn, Defendants Holder, Hargrove, Hopper and Moore claim that that they cannot be held liable under §1983 for failure to provide medical care because the Jail contracts with ACH for all of the medical care. (Dunklin Memorandum, p. 6). Likewise, Defendants cannot be held liable for their general supervision of the medical staff unless the Jail's personnel were personally involved in the allegedly unconstitutional act. (<u>Id.</u>, p. 7).

Moreover, Defendants Holder, Hargrove, Hopper and Moore claim that they are entitled to qualified immunity because they were not deliberately indifferent to Plaintiff's medical needs. (Dunklin Memorandum, p. 6). "Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known."

<u>Ottman v. City of Independence, Missouri</u>, 341 F.3d 751, 756 (8th Cir. 2003). The Court has two

steps to analyze whether a government official is entitled to qualified immunity. First, the Court

determines whether the facts as asserted by the plaintiff show the government official's conduct

violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct.

2151 (2001). If the answer is no, the Court grants qualified immunity. If the answer is yes, the Court

then analyzes "whether the right was clearly established." <u>Id.</u> The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear that the conduct was

unlawful in the situation confronted. <u>Id.</u> at 202.

Based upon the record, the Court finds that Plaintiff cannot establish a claim against

Defendants Holder, Hargrove, Hopper and Moore. Although Plaintiff claims that Defendants

instructed medical staff not to treat Plaintiff, Dr. Rakestraw testified that he was never instructed by

Jail personnel not to treat Plaintiff. (Rakestraw Facts, ¶29). As evidence, the record indicates that

Plaintiff was provided with professional medical treatment each time he requested medical attention

and each time it appeared medical attention was necessary.

Plaintiff also argues that Defendants were deliberately indifferent to his medical needs

because they refused to provide him treatment based upon cost and that they, instead, released him

to obtain treatment at his own expense, knowing that he did not have insurance. (Opposition, p.

11).[12] Plaintiff fails to identify how releasing him to obtain his own medical care demonstrates a

constitutional violation for deliberate indifference. The Jail personnel are not deliberately indifferent

when they allowed Plaintiff to obtain medical treatment both inside the Jail and provided him with

---

[12]In fact, Missouri statute provides that, if a prisoner does not have insurance, the prisoner is liable for any medical costs incurred. <u>See</u> Mo.Rev.Stat. §221.120 ("If the prisoner is not eligible for such health insurance benefits then the prisoner shall be liable for the payment of such medical attention, dental care, or medicine, and the assets of such prisoner may be subject to levy and execution under court order to satisfy such expenses in accordance with the provisions of section 221.070, and any other applicable law."); Reply, pp. 3-4.

the opportunity to obtain treatment outside of the Jail. Moreover, as discussed earlier, Plaintiff has provided no evidence that any delay in Plaintiff's treatment caused a serious medical injury. Crowley, 109 F.3d at 502; Pendleton, 2012 U.S. Dist. LEXIS 105491, at *34-35; Pfeiffer, 2012 U.S. Dist. LEXIS 49898, at *23-24.

Lastly, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's claim that they were deliberately indifferent to his medical needs. Based upon the undisputed facts, Defendants' conduct did not violate Plaintiff's clearly established federal constitutional or statutory rights.[13] As previously discussed, the record demonstrates that Plaintiff received medical treatment every time it was requested. The Court grants Defendants Holder, Hargrove, Hopper and Moore's motion for summary judgment on Plaintiff's deliberate indifference claim.

### 2. Dunklin County

"To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009)(citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "And this custom, policy, or practice must be 'the "moving force" behind the violation.'" Luckert v. Dodge County, 2012 U.S. App. LEXIS 12790, at *25 (8th Cir. June 22, 2012)(quoting Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir. 1985)). "'Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional.'" Luckert, 2012 U.S. App. LEXIS 12790, at *26 (quoting Patzner, 779 F.2d at 1367).

---

[13]Plaintiff argues that Defendants "are not entitled to qualified immunity due to personal involvement and [because] their action[s] ... cause a violation of Plaintiff's constitutional rights." (Opposition, p. 17). Plaintiff's conclusory and general statement fails to create an issue of material fact regarding Defendants' entitlement to qualified immunity.

Here, Plaintiff cannot show that the his constitutional rights were violated by Dunklin County while he was in Jail because the County does not control the Jail. Pursuant to Mo.Rev.Stat. §221.020, the sheriff of Dunklin County has "the custody, rule keeping and charge of the jail within his county..." Thus, "[t]he responsibility for care of the prisoners appears to fall squarely on the shoulders of the county Sheriff[,]" and not with the County. Jones v. Houser, 489 F. Supp. 795, 798 (E.D. Mo. 1980)(citing Tatum v. Houser, 480 F. Supp. 683 (E.D. Mo. 1979)). Plaintiff cannot identify any custom or policy enacted by the County that resulted in a constitutional deprivation because the Jail is controlled by the Sheriff. Thus, Plaintiff's claim against the County for deliberate indifference to his medical care fail as a matter of law.

In the alternative, the Court finds that Plaintiff has not alleged a policy or custom of the County that is responsible for the alleged constitutional violation. See also Reply, p. 2 ("Plaintiff has not established any policies and procedures of the Dunklin County Justice Center by way of Affidavit or discovery documents"); Monell, 436 U.S. at 690-91. Construing Plaintiff's pleadings liberally, Plaintiff asserts that Dunklin County had the policy of restricting medical care provided to inmates and forcing them to seek out medical care at the inmates' own expense. (Plaintiff's Motion, ¶33). Even if there were such a policy, this policy did not cause Plaintiff any constitutional deprivation. As discussed herein, the medical treatment afforded to Plaintiff was not deliberately indifferent to his medical needs. See Jenkins v. County of Hennepin, 557 F.3d 628, 633-634 (8th Cir. 2009)(granting summary judgment to the County where the plaintiff could not establish that any of the county's official policies reflected deliberate indifference to serious medical needs). Moreover, Plaintiff has not shown that the policy of releasing inmates to obtain their own care is unconstitutional. Accordingly, the County cannot be liable for deliberate indifference and Plaintiff's claim against it fails as a matter of law.

## C.     Denial of Disciplinary Hearing

After his altercation with another inmate, Plaintiff claims that Defendants placed him in Cell 125, the "drunk tank,"[14] to punish him "without any evidence or disciplinary hearing" and "without providing an adequate written report" or explanation. (Compl., ¶65). Plaintiff claims that these deprivations, without a hearing, violated his right to due process and liberty, guaranteed by the Fourteenth Amendment. (Compl., ¶¶65, 66). Plaintiff asserts that his "liberty interest was violated when he was subjected to conditions and confinement that were much worse than is normal for prisoners." (Plaintiff's Motion, ¶8 (citing cases)).

To prevail on his § 1983 due process claims, Plaintiff must establish that he was deprived of a protected liberty interest. Persechini v. Callaway, 651 F.3d 802, 806 (8th Cir. 2011)(citing Sandin v. Conner, 515 U.S. 472, 487, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). "Protected liberty interests may arise from two sources -- the Due Process Clause itself and the laws of the States." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) (quotation omitted). In Sandin, the Supreme Court addressed whether the State has created a liberty interest if the alleged deprivation is an adverse change in an inmate's conditions of confinement. The Court explained that when the Due Process Clause does not itself confer a liberty interest, then whether state law has created a protected interest turns on whether the challenged conditions impose "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484 (finding no liberty interest protecting against a 30-day assignment to segregated confinement because it did not present a dramatic departure from the basic conditions of the inmate's sentence). "After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to

---

[14]The "drunk tank" consisted of only a toilet and sink and has a concrete floor. (Compl., ¶67).

the ordinary incidents of prison life.'" <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005)(quoting <u>Sandin</u>, 515 U.S. at 483-84).

Defendants claim that Plaintiff's liberty interests are not implicated because Plaintiff's five days in the drunk tank did not affect his sentence at all. (Dunklin Memorandum, p. 11). Moreover, Defendants assert that Plaintiff has not shown that being placed in the "drunk tank" amounted to an atypical or significant hardship. (<u>Id.</u>).

The Court finds that Plaintiff cannot state a §1983 claim because he does not have a liberty interest in avoiding the "drunk tank" for five (5) days. "It is well-established that the constitutional rights of prison inmates are legitimately curtailed as a result of their convictions for criminal offenses[.]" <u>Wycoff v. Nichols</u>, 94 F.3d 1187, 1190 (8th Cir. 1996)(citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 467, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974)). Plaintiff has no liberty interest in avoiding the "drunk tank" unless the conditions of his confinement "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Sandin</u>, 515 U.S. at 484; <u>Wycoff</u>, 94 F.3d at 1190. There is nothing in the record to suggest that the conditions of Plaintiff's five days in the drunk tank were atypical of the ordinary conditions of confinement or that they rose to the level of a significant deprivation. <u>See</u> Reply, p. 5 ("Plaintiff has not provided any Affidavit or other evidence to indicate that his prison sentence, by being placed in segregation for five days, was affected or that he was treated any differently than other persons."). Plaintiff complains that the drunk tank only contained a toilet, sink and a concrete slab for sleeping. The Court finds that these conditions of confinement are "within the parameters of confinement normally to be expected by a person serving a sentence for criminal activity." <u>Wycoff</u>, 94 F.3d at 1190 (ten days disciplinary detention and 100 days in maximum-security cell); <u>Davis v. Norris</u>, 230 Fed. Appx. 636, 636-37 (8th Cir. 2007)(same; "more restrictive living conditions" did not amount to an "atypical and

significant" hardship); <u>Hemphill v. Delo</u>, 124 F.3d 208 (8th Cir. 1997)(same; four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation); <u>Freitas v. Ault</u>, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(same; ten days administrative segregation and thirty days on "on-call" status, as well as loss of higher paying job and numerous privileges). Thus, the Court finds that Plaintiff's case does not present an atypical or significant departure from the basic conditions of his six month sentence. The Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourteenth Amendment claim.

### D. Excessive Force

Plaintiff claims that Defendants Hargrove, Hopper and Willie Moore used excessive force when they dumped Plaintiff out of his wheelchair and sprayed him with mace. (Plaintiff's Motion, ¶23). In turn, Defendants argue that the force used was not excessive and that they are entitled to qualified immunity. Dr. Rakestraw had advised Defendants that Plaintiff did not need a cane or wheelchair. (Dunklin Memorandum, p. 9). Defendants reportedly asked Plaintiff four times to let go of the wheelchair before they sprayed Plaintiff with mace for refusing "a lawful order of the corrections officer." (<u>Id.</u>). Defendants claim that a "prisoner does not have a right to resist, even passively, for violation of orders from prison authorities." (<u>Id.</u> (citing <u>Jackson v. Allen</u>, 376 F. Supp. 1393, 1394 (E.D. Ark. 1974)).

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." <u>Johnson v. Blaukat</u>, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." <u>Id.</u> (quotation omitted). "The test for

reasonableness or good faith application of force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.'" Id. (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir.2002)).

In determining whether an application of mace or pepper spray implicates the Eighth Amendment requires a fact-specific inquiry as to the extent of pain inflicted upon the inmate. Lawrence v. Bowersox, 297 F.3d 727, 731 (8th Cir. 2002); Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). The use of pepper spray must be "reasonable under the circumstances," but it must not be "punitive, arbitrary, or malicious." Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002).

First, the Court finds that Plaintiff has not alleged a use of force sufficient to constitute a constitutional deprivation. "'The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Jones, 207 F.3d at 495 (quoting Hudson, 503 U.S. at 9-10). Viewing the evidence in Plaintiff's favor, the Court finds that, under the circumstances presented, Defendants' administration of mace was not "repugnant to the conscience of mankind." The Eighth Circuit has recognized that applications of force are constitutionally permissible when "when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy" Jones, 207 F.3d at 496 (citing Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993), Soto v. Dickey, 744 F.2d 1260 (7th Cir. 1984)). In Jones, the Eighth Circuit citing approvingly the use of mace in small quantities to control a "recalcitrant inmate." 207 F.3d at 496. The record before the Court indicates that Defendants utilized mace to enforce a jail order upon a noncompliant inmate, and not for any sadistic purpose. The record also does not indicate that Plaintiff was refused any medical treatment or otherwise forced to suffer after being sprayed with

mace; in fact, he was permitted to take a shower to clean off the pepper spray.  See ECF No. 82-1, p. 3.  The Court finds that the record "falls far short" of showing there was no plausible basis for Defendants' belief that limited, purposeful force was necessary under the circumstances.  Jones, 207 F.3d at 497 (citing Whitley v. Albers, 475 U.S. 312, 323, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)).  Therefore, the Court finds that Plaintiff fails to establish an Eighth Amendment violation.

In addition, the Court also finds that Defendants are entitled to qualified immunity.  "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established."  Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011).  As discussed herein, the Court finds that Plaintiff has not alleged a constitutional deprivation based upon Defendants' use of mace.  Because the Court finds that Defendants' use of force does not rise to the level of a constitutional deprivation, they are entitled to qualified immunity and Plaintiff's claim against Defendants are barred.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [77] is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Gregory Rakestraw, D.O. [80] and the Motion for Summary Judgment of Dunklin County, Missouri, Willie Moore, Bob Holder, Billy Harper, and Rod Hargrove [82] are **GRANTED**.

**IT IS FINALLY ORDERED** that judgment is hereby entered for the defendants.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 6th day of September, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE